IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BahiaG8, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Sabedoria, LLC, et al, <br><br> Defendants. | Civil No. 23-1053(GMM) |

**OPINION AND ORDER**

Plaintiff BahiaG8, LLC's ("Plaintiff" or "BahiaG8") *Motion for Partial Summary Judgment and Memorandum of Law* ("*Motion for Partial Summary Judgment*") requests summary judgment as to claims for damages arising from an alleged breach of contract. (Docket No. 11). For the reasons set forth below, Plaintiff's *Motion for Summary Judgment* is **DENIED WITHOUT PREJUDICE**.

**I. PROCEDURAL BACKGROUND**

On February 2, 2023, Plaintiff filed a Complaint against Sabedoria, LLC ("Sabedoria") and co-defendants Companies A-Z, John Doe and Patty Doe, alleging that they breached a "Purchase and Sale Agreement" ("PSA") regarding a property identified as LotG8 ("LotG8" or the "Property") located at the Bahía Beach Resort & Golf Club in Río Grande, Puerto Rico, which is owned by BahiaG8. (Docket No. 1). On March 21, 2021, BahiaG8 and Sabedoria signed the PSA to sell and buy the Property. Per the PSA, BahiaG8 would

sell the Property to Sabedoria for $7,600,000.00 and they agreed that after receiving the deposit for $760,000.00, Sabedoria would have exclusive right of purchase of the Property. (Docket No. 11-2 at 2).

On April 10, 2023, Plaintiff moved for partial summary judgment. It alleged that the PSA is a contract of option which established that when the purchase of the Property cannot be fulfilled due to actions of the buyer (Sabedoria), the seller can retain the deposit. (Docket No. 11). According to Plaintiff, the closing of the Property was not fulfilled due to Sabedoria's failure to appear on December 21, 2022. Therefore, Plaintiff posits that BahiaG8 is entitled to retain the deposited amount of $760,000.00, since the closing of the LotG8 property could not be fulfilled due to Sabedoria's actions. On May 30, 2023, Sabedoria filed its *Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law*. (Docket No. 19). Sabedoria argues that the Court should deny summary judgment since there are material facts in controversy. Specifically, Sabedoria alleges Plaintiff has failed to show that according to the PSA, a final inspection has been made. To this point, it avers Plaintiff did not notify a schedule of inspection, nor allowed Defendant to inspect the unit. It adds that Plaintiff has not established the "completion of construction" by providing a certification "as

completed" in accordance with Plans and Specifications by the architect of record; nor has it provided a certificate of occupancy, a punch list, and a certified set of "As-Built" plans and specifications of the Residential Home. Sabedoria argues that to the extent that all the terms and conditions required by the PSA have not been fulfilled, a closing date cannot be established. In addition, Sabedoria states this Court should deny summary judgment to allow time for discovery to be conducted.

## II. SUMMARY JUDGMENT STANDARD

A.  Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Ellis v. Fidelity Management Trust Company, 883 F.3d 1, 7 (1st Cir. 2018)). In turn, a fact is material "if it 'has the potential of affecting the outcome of the case.'" Id. (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). In making its determination, the Court will look to "the pleadings,

depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 52, 62 (1st Cir. 2020) (citation omitted). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). However, it "cannot merely 'rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the evidence of an authentic dispute.'" Feliciano-Muñoz, 970 F.3d at 62 (*quoting* McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). The nonmovant similarly cannot rely on "conclusory allegations, improbable inferences, and unsupported speculation" to defeat summary judgment. River Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st Cir. 2019) (citation and quotation marks omitted).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from engaging in assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Rodríguez-Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022).

**Civil No. 23-1053(GMM)**
**Page -6-**

Also, "[i]n collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials." Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004) *citing* United States v. Rivera-Rosario, 300 F.3d 1, 6 (1st Cir. 2002).

Furthermore, "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment." Davila v. Corp. De P.R. Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007); *see* Fed. R. Civ. P. 56(e) (requiring parties to properly support an assertion of fact); Nor-Dec, Inc. v. Viracon, Inc., 781 F. Supp. 2d 38, 42 (D.P.R. 2010)(*citing* Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990))("[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

B.   Local Civ. R. 56

In this District, summary judgment is governed by Local Rule 56. *See* Local Civ. R. 56. Per this rule, the non-movant must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If the fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." Id. In its opposing statement, the non-movant can include additional facts supported by record citations. *See* Id. In turn, the movant "shall

submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Local Civ. R. 56(d). In its statement, the movant shall admit, deny, or qualify those additional facts. *See* Id. Any denial and qualification that the movant raises must be supported by a record citation. *See* Id.

Failure to comply with Local Rule 56(c) allows the Court to accept a party's proposed facts as stated. *See* López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* López-Hernández, 64 F.4th at 26.

### III. UNCONTESTED FACTS

The Court examined Plaintiff's *Statement of Uncontested Material Facts* (Docket No. 11-1) and *Defendant's Response to Plaintiff's Statement of Uncontested Facts*. (Docket No. 19-1) The Court only credits material facts properly supported by a record citation and has not considered documents submitted in the Spanish language. *See* Local Rule 5(c); Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008); Estades-Negroni v.

<u>Assocs. Corp. of N. Am.</u>, 359 F.3d 1, 2 (1st Cir. 2004) *citing* <u>United States v. Rivera-Rosario</u>, 300 F.3d 1, 6 (1st Cir. 2002).

Accordingly, the Court makes the following findings of fact:

1. Bahia G8 is the sole owner of the property identified as Lot G8 Atlantic Drive of the Bahia Beach Atlantic Estate located at the Bahia Beach Resort & Golf Club in Rio Grande, Puerto Rico. (Docket Nos. 11-1 ¶ 1; 19-1 ¶ 1; 11-2).
2. On March 21, 2021, BahiaG8 and Sabedoria signed a PSA to sell and buy the LotG8. (Docket Nos. 11-1 ¶ 2; 19-1 ¶ 2; 11-2).

3. The PSA was signed by Chadbourn Sharpe as the Managing Member of BahiaG8 and by Taino A. López as the Managing Member of Sabedoria. (Docket Nos. 11-1 ¶ 3; 19-3 ¶ 2; 11-2).

4. Per the PSA, the parties agreed that BahiaG8 would sell the LotG8 to Sabedoria, who would purchase the Property cash for $7,600,000.00. (Docket Nos. 11-1 ¶ 4; 19-3 ¶ 4; 11-2).

5. Per the PSA, the parties agreed that, after receiving the deposit for $760,000.00, Sabedoria would have exclusive right of purchase. (Docket Nos. 11-1 ¶ 5; 19-3 ¶ 5; 11-2).

6. The $760,000.00 was deposited by Sabedoria in an escrow account on behalf of The Title Security Group, LLC, who is BahiaG8's escrow agent. (Docket Nos. 11-1 ¶ 6; 19-3 ¶ 6; 11-2).

7. As to the term to close, Clause 2(b) of the PSA establishes the following:

> <u>Term to Close</u>. Subject to the terms and conditions of this Agreement being in full compliance and the completion of the due diligence described below, and the Purchaser's full satisfaction with the results thereof in accordance with the provisions of Section 3 (a) below, the Purchaser shall acquire title to the Property (i) on or prior to Thirty (30) days after the later of the date of

>the final inspection and approval by Purchaser of the construction of the Residential Home in accordance with the terms of this Agreement, or (ii) the date of issuance of the Use Permits of the Residential Home by the Corresponding Governmental Authority (such period from the signing of this Agreement through the end of such 30-day period, as may be extended pursuant to the terms of this Agreement, the "Term").

(Docket No. 11-2 at 3).

8. Clause 2(b) of the PSA also establishes:

>Notwithstanding the above, Seller agrees that the Term shall not exceed a period of fifteen (15) months from the date of execution of this Agreement. If the Term elapses and the Seller is still unable to (i) complete the construction of the Residential Home in accordance with the terms of this Agreement, (ii) obtain the Use Permits of the Residential Home by the Corresponding Governmental Authority or (iii) execute the Deed of Purchase Sale for reasons not attributable to Seller or its contractors, then Seller and Purchaser will agree to extend the Term for an additional period of three (3) months; provided that the Term will be automatically extended for an additional period of up to three (3) months, in the event that the delay is caused solely by acts of God or Force Majeure that specifically prohibit and/or make impossible the completion of the construction of the Residential Home, the obtainment of the Use Permits and/or the closing of the transaction during the Term, or any extension thereof pursuant to this Agreement. If after applicable extension elapses and the Seller is still unable to (i) complete the construction of the Residential Home in accordance with the terms of this Agreement, (ii) obtain the Use Permits of the Residential Home by the Corresponding Governmental Authority and/or (iii) execute the Deed of Purchase Sale for reasons not attributable to Purchaser, then Purchaser may (a) request specific performance of this Agreement only if the delay is caused by the actions or

      omissions of the Seller, or its contractors or (b) declare this Agreement to be immediately terminated, and Purchaser shall be entitled to receive a full reimbursement of the Deposit from the Escrow Agent in the event that Seller and Purchaser are unable to negotiate, by mutual agreement, an additional extension of the Term". (Docket No. 11-2 at 3-4).

9. Per the PSA, the parties agreed that the term would be automatically extended for a period of 3 months if any delay was due to acts of God or force majeure. (Docket Nos. 11-1 ¶ 9; 19-3 ¶ 9; 11-2).

10. An "Escrow Agreement" was signed by BahiaG8 Sabedoria and The Title Security Group, LLC on March 5, 2021. (Docket Nos. 11-1 ¶ 10; 19-3 ¶ 10; 11-2).

11. Attorney Carlos Carrillo ("Attorney Carrillo"), the attorney in charge of drafting the deed of purchase and attending other matters related to the closing of the property, requested a series of information as to the buyer and others to Sabedoria's real estate agent, Brian Aronson ("Aronson") from Clubhouse Real Estate. (Docket Nos. 11-1 ¶ 14; 19-3 ¶ 14; 11-4).

12. On December 12, 2022, Aronson sent via e-mail a letter requesting a 3-month extension of time on behalf of Sabedoria, since Sabedoria's economic situation suffered some changes. (Docket Nos. 11-1 ¶ 15; 19-3 ¶ 15; 11-5; 11-6).

13. The extension request was denied by BahiaG8. (Docket No. 11-5 at 5-6).

14. The PSA term had been previously extended in favor of BahiaG8 for an additional six (6) months. (Docket No. 15-5 at 5-6).

15. On December 15, 2022, Attorney Carrillo sent the purchase deed and other documents for the revision of the parties. (Docket Nos. 11-1 ¶ 18; 19-3 ¶ 18;11-5 at 4).

16. On December 19, 2022, Attorney Carrillo again requested the name of the entity who would be buying the LotG8, since that was what was missing to prepare the

Settlement Statement and finalized the documents needed for the closing to be held on December 21, 2022. (Docket No. 11-5).

17. On December 19, 2022, a preliminary Settlement Statement was sent to all parties for review. (Docket Nos. 11-1 ¶ 21; 19-3 ¶ 21;11-5 at 2-3).

18. On December 19, 2022, the final Closing Statement was sent to the parties for review and again, Attorney Carrillo requested Sabedoria to inform the name of the entity who would be buying Lot G8. (Docket Nos. 11-1 ¶ 22; 19-3 ¶ 22;11-5 at 2-3).

19. By December 20, 2022, Sabedoria had not informed the name of the entity who would be buying the LotG8 and there had been no confirmation that the funds had been transferred to the closing agent or that certified checks would be provided during the closing. (Docket Nos. 11-1 ¶ 23; 19-3 ¶ 23;11-5 at 2).

20. Clause 2(d) of the PSA establishes:

> <u>Closing Logistics.</u> <u>The closing of the purchase and sale of the Property (the "Closing") shall take place at any time during the Term, or any extension thereof, on a date to be mutually agreed upon between the seller and the Purchasers, but in no event later than 5:00 p.m. (Puerto Rico time)</u> on the day on which the Term expires (the "Closing Date"), at the offices of Attorney Carlos R. Carrillo Jimenez in San Juan, Puerto Rico or at the Bahia Beach Residential Sales Office.
> On the Closing Date, (i) the Seller and the Purchaser shall execute and deliver a deed of purchase and sale, in form and substance acceptable to the undersigned parties and in accordance with the laws of Puerto Rico (the "Deed of Purchase and Sale"), in order to transfer title of the Real Property to the Purchaser in the corresponding section of the Property Registry of Puerto Rico (the "Registry"); (il) the Seller and the Purchaser shall execute and deliver a Bill of Sale in form and substance acceptable to the undersigned parties, to transfer and deliver to the Purchaser the Plans and any movable property

> included in the transaction (the "Bill of Sale"); and (iii) the Seller and the Purchaser shall execute and deliver such other documents, agreements, assignments and public instruments pursuant to which title to the Property shall be conveyed by the Seller to the Purchaser, free and clear of any and all property tax debts, maintenance dues and assessments, mortgages, rights of first refusal and repurchase, and any other liens and encumbrances, subject only to the exceptions listed on Schedule B, the Title Commitment (as such term is hereinafter defined) applicable to the Real Property as set forth in Exhibit B attached The Deed of Purchase and thereto (the "Permitted Exceptions").Sale shall be prepared and executed before a notary public of the law firm Carlos R. Carrillo Jimenez (the "Notary Public". <u>The Closing Date may only be extended or postponed by mutual consent of the parties, in writing, which consent shall not be unreasonably withheld, delayed or denied by the parties of this Agreement.</u>

(Docket No. 11-2 at 3-4). (Emphasis added).

21. On December 21, 2022, at 5:38pm, BahiaG8 informed all parties that since the closing had not occurred prior to 5:00pm, as stated in the PSA, it would be enforcing clause 3(b) of the PSA and would be retaining the deposited amount of $760,000.00 and proceed to sell the property to another seller without incurring any liability. (Docket Nos. 11-1 ¶ 25; 19-3 ¶ 25;11-5 at 1).

22. In the pertinent part, Clause 2(e) of the PSA states:

> <u>Construction & Permits of the Residential Home.</u> Prior to the execution of this Agreement, Seller shall have provided for inspection by Purchaser or his representatives, all pertinent information relating to the design, development and construction of the Residential Home, including but not limited to the Plans, drawings, exact location, list of materials, government approvals and entitlements, list of fixtures, and specifications (collectively the "Specifications") for the construction of the

>   Residential Home, including the type, facade, method of construction, location and topography of the lot and its surroundings. The Seller shall build, at Seller's cost. The Residential Home in substantial accordance with the Plans and Specifications for the development of the Residential Home shown to Purchaser at the time of execution of this Agreement. It shall be the sole responsibility of Seller to meet and comply with all legal requirements and obtain all necessary approvals and permits for the design, development, construction and use of the Residential Home. At the completion of construction of the Residential Home, Seller shall deliver to Purchaser a certified Set of "As-Built plans and specifications of the Residential Home, copy of the certificate of occupancy or Use Permits of the Residential Home, and such other certificates related to the Residential Home. Seller has selected a Centurion IC a licensed general contractor to complete the construction of the Residential Home in a good and workmanlike manner, in accordance with the Plans and Specifications and in accordance with all applicable laws, at Seller's cost. Seller shall produce, to the extent available to Seller and/or or cause Centurion LLC (and any sub-contractor's) to produce, evidence of Centurion ILC's (and any sub-contractor's) license, experience, bondability, insurance, financial standing and references to Purchaser. For purposes of this Agreement, "completion of construction" shall mean (i) certified as completed in accordance with Plans and Specifications by the architect of issuance of a certificate of occupancy (or its equivalent), and (iii) all punch list items having been completed.

(Docket No.11-2 at 5-6).

  23. As to the inspection prior to closing the PSA establishes in part:

>   (b)   <u>Inspection Prior to Closing:</u> The Purchaser will have opportunity prior to the Closing, on the dates and at the times mutually scheduled by the

>Seller and Purchaser, to inspect the Unit with the Seller's representative provided, that, (the "Inspection"); if the Purchaser, within five having (5) days after received a notice from the Seller scheduling an Inspection, requests to the Seller in writing that such Inspection be rescheduled to another date or time, for justified reasons, the Seller and the Purchaser shall agree upon an alternate date or time, as the case may be, for the performance of such Inspection. Immediately after the Inspection is completed, the Purchaser will sign an inspection statement (*punch list*) listing any defects with respect to the Unit that the Purchaser discovers and shall deliver such inspection statement to the Seller's upon its completion. If any item listed by the Purchaser in the inspection statement is actually defective in the Seller's opinion (keeping in mind the construction standards applicable in Puerto Rico for similar property), the Seller agrees to correct those defects at its cost prior to the Closing. The Purchaser acknowledges and agrees that the Closing will not be postponed as a result of the Purchaser's failure to conduct the Inspection at the time and date scheduled (or rescheduled, to the extent applicable) therefor or its failure to sign and deliver to the Seller's representative the completed inspection statement at the conclusion of the Inspection. In either of such cases, the Purchaser shall be deemed to have waived its right to perform the Inspection and its right to require that the seller correct any defects with respect to the Unit prior to the Closing, without prejudice to the Purchaser's rights under Section 10 hereof. No escrows or holdbacks of closing funds will be permitted.

24. Clause 3(b) of the PSA states:

>In the event that, on the Closing Date (provided that the Purchaser did not terminate this Agreement on or prior to the expiration of either the Term allowed for the Appraisal or the Due Diligence Period or as otherwise set forth in this Agreement, for any of the reasons provided for in this Agreement including but not limited to

>    Section 2(b), 2(h), 2(i), Section 3(a) or Section
>    6), the Purchaser does not acquire title to the
>    Property for any reason not imputable to the
>    Seller; then, as the Seller's remedy under this
>    Agreement, the earnest money given as a deposit
>    will be forfeited in its entirety in favor Seller
>    and Seller may sell the property without any
>    liability claim from Purchaser to another
>    prospective Purchaser.
>
> (Docket Nos. 11-1 ¶ 26; 19-3 ¶ 26;11-2 at 1). (Emphasis added).

## IV. DISCUSSION

The issue before the Court is simple: a contract law dispute arising out of an option contract. BahiaG8 moves for partial summary judgment on the grounds that the PSA provides retaining the $760,000.00 deposit for Sabedoria's failure to appear at the closing of LotG8. Sabedoria opposes partial summary judgment. It contends that there are essential facts in controversy relating to BahiaG8's compliance with the terms and conditions set forth in the PSA, particularly those pertaining to inspection prior to closing.

Upon a careful examination of the record and review of the evidence in the light most favorable to the nonmoving party, the Court finds that BahiaG8 has not met its burden of showing there are no genuine issues as to any material fact. On the contrary, as it stands today, there is no admissible evidence that leads the Court to ascertain -much less decide- on the parties' compliance with the PSA, before it can determine on the activation of a

**Civil No. 23-1053(GMM)**
**Page -16-**

penalty clause. Specifically, at this time, the record is absent of admissible evidence surrounding compliance with the requirements of the inspection prior to closing. Therefore, the Court finds there are genuine issues of material fact that preclude summary judgment at this juncture.

### V. CONCLUSION

For the reasons stated above, Plaintiff's *Motion for Partial Summary Judgment* is **DENIED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, October 19, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE